FILED

2026 May-28  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **AMANDA COLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **2:24-cv-1669-EGL** |
| | ) |
| **OASIS HEALTHCARE, INC.** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

On December 3, 2024, Plaintiff Amanda Cole sued Defendant Oasis Healthcare, Inc. *See* Doc. 1. Oasis Healthcare now moves for summary judgment. *See* Doc. 35. For the reasons below, the motion is **GRANTED**.

## BACKGROUND

Oasis Healthcare, a hospice-care service, hired Cole on January 23, 2023, to work as a Team Coordinator at its Birmingham location. Doc. 36 at 6, ¶¶1-3, 5; Doc. 41 at 7-8. Two Team Coordinators, a Director of Operations, a Clinical Manager, an Admissions Nurse, and an Executive Director, typically worked out of that office. Doc. 36 at 6-7, ¶6; Doc. 41 at 8. Other personnel, such as home-health aides and nurses, reported there but worked in the field. Doc. 36 at 6-7, ¶6; Doc. 41 at 8. Team Coordinators in Birmingham were responsible for placement, scheduling, ordering medical equipment and supplies, responding to records requests, intake, following up on physicians' orders and signatures, referrals, and verifying benefits. Doc. 36 at

7, ¶7; Doc. 41 at 8. Those duties were divided between Team Coordinators, yet they nevertheless were trained in each task, with no difference in difficulty or status existing between roles. Doc. 36 at 7, ¶¶8-9; Doc. 41 at 8-9. Each Team Coordinator therefore could be required to perform any of the job duties covered by the role, for example, if one of them were absent. Doc. 36 at 8, ¶11; Doc. 41 at 9. For most of her employment, Cole handled scheduling while another Team Coordinator, Mariah Malcom, handled intake. Doc. 36 at 7-8, ¶10; Doc. 41 at 9.

During Cole's employment, Oasis merged with Adoration Healthcare, resulting in a third Team Coordinator, Cindy Moore, transferring to the Birmingham office. Doc. 36 at 8, ¶12; Doc 41 at 9-10. The branch manager therefore allocated some of Cole's and Malcom's duties to her. Doc. 36 at 8, ¶12; Doc. 41 at 9-10. Moore was thereafter transferred to Tuscaloosa, where she became the Team Coordinator for that office. Doc. 36 at 8, ¶13; Doc. 41 at 10.

In April 2024, Malcom resigned. Doc. 36 at 8, at ¶14; Doc. 41 at 10. Cole wanted to take over Malcom's former intake duties, but Cindy Moore was asked to transfer back to the busier Birmingham branch to fill the vacancy instead, as the branch was too large for one person alone. Doc. 36 at 8-9, ¶¶15-16; Doc. 41 at 10-11. Accordingly, the allocation of duties amongst the Team Coordinators at the Birmingham office remained the same, as management believed this was the most efficient and least disruptive way of handling the transition. Doc. 36 at 9-10, ¶¶20-

21; Doc. 41 at 11-12. Race played no factor in the decision to have Moore return to take on Malcom's intake duties. Doc. 36 at 10, ¶23; Doc. 41 at 12.

At one point, Cole applied to join Oasis's business-development team but did not receive an offer because she did not have a college degree and lacked the work experience needed. Doc. 36 at 10-11, ¶¶26, 28; Doc. 41 at 13. Race played no role in that decision. Doc. 36 at 10, ¶27; Doc. 41 at 13.

On or around February 2024, Cole decorated a bulletin board at the Birmingham office to commemorate Black History Month. Doc. 36 at 11, ¶29; Doc. 41 at 13. Cole claims that Malcom informed her that Malcom overheard Kim Copeland, a white female, questioning whether the decorations were appropriate because staff from corporate compliance was scheduled to visit the branch the next day. Doc. 36 at 11, ¶¶30-31; Doc. 41 at 13-14. Malcom also reported this questioning to Julie Doss, who then referred the report to HR Business Partner Deedee Johnson. Doc. 36 at 11, ¶¶32-33; Doc. 41 at 14. Johnson investigated the report and interviewed Cole, Malcom, Copeland, and another co-worker, Josh Shirley. Doc. 36 at 11-12, ¶34; Doc. 41 at 14. Johnson determined that Copeland had questioned whether the bulletin board violated compliance rules, that she was informed it was

3

not inappropriate, and race was never mentioned in the questioning of the appropriateness of the bulletin board decorations. Doc. 36 at 12, ¶¶35-36.[1]

On or about May 1, 2024, Cole complained to Doss, claiming she was mistreated by Copeland. Doc. 36 at 12, ¶37; Doc. 41 at 16. She described being left off emails, being temporarily moved to a large workspace at the back of the office area, seeing a Facebook post by Copeland that she believed referred to Malcom's departure, and having trouble getting her office door to close when she was moved back to the front of the office, though she never mentioned race in this report. Doc. 36 at 12-13, ¶¶38-39; Doc. 41 at 16-17. Cole admits that being left off emails did not affect her pay, that she received information necessary to perform her job, and that she was not disciplined or otherwise negatively affected by it. Doc. 36 at 13, ¶40; Doc. 41 at 17. The Facebook post consisted of a repost stating, "God will take care of your wrongdoers," and did not mention race, Cole, or Malcom; and Cole admitted the post could have been unrelated to the workplace. Doc. 36 at 14, ¶47; Doc. 41 at 22. After these complaints, Doss offered to transfer Cole to Oasis's soon-to-be-opened Cullman office, but Cole voluntarily resigned a few weeks later to obtain other employment. Doc. 36 at 15, ¶¶52-53; Doc. 41 at 24-25; Doc. 34-2 at 21

---

[1] Cole partially disputes this but cites no evidence relevant to whether this was Johnson's determination. *See* Doc. 41 at 14-15.

(Q: "So essentially you found a better opportunity instead of taking the transfer at … Cullman?" [Cole:] "Yes.").

On or about September 17, 2024, and after having left Oasis for her new job, Cole filed a Charge of Discrimination with the EEOC against Oasis, claiming retaliation and discrimination on the basis of race in violation of Title VII, but did not include a claim based upon a racially hostile work environment. Doc. 36 at 15, ¶¶54-55; Doc. 41 at 25.

## STANDARD

Summary judgment is appropriate when the facts, supported by the record and taken in the light most favorable to the nonmovant, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And one is "material" if it is an element of the underlying claim that might affect the case's outcome. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The movant may discharge its burden by pointing out to the district court that there is no evidence supporting an essential element of the nonmovant's case. *Id.* at 325. The

5

district court must view the evidence and all factual inferences in the light most favorable to the nonmovant. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmovant then must show that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the record evidence would not permit a rational trier of fact to find for the nonmovant, then there is no genuine dispute for trial. *Id.* All reasonable doubts, however, are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## DISCUSSION

### I.    Disparate Treatment (Counts 1-3)[2]

Cole claims that Oasis discriminated against her by denying her a promotion to the business development team; denying her the intake duties she requested; temporarily placing her in the back of the office; and calling her "bad names."[3] Doc.

---

[2] The Court addresses these counts together because they appear substantially identical. The Court notes, however, that Cole invokes "the IHRA" as the cause of action supporting Count 2. *See* Doc. 1 at ¶¶31-37. This acronym is nowhere defined, and the Court cannot guess what law is meant. Oasis posits that it may be a claim under the Illinois Human Rights Act that was mistakenly pasted in from another pleading, because this case has nothing to do with Illinois. Doc. 36 at 5 n.1 Whatever the mystery claim may be, Cole does not say, and thus the Court grants Oasis summary judgment on Count 2.

[3] Cole claims for the first time in her briefing that she was accused of bringing a gun to the office, and that this accusation also constitutes discrimination. Doc. 41 at 7. Regardless of the merits of that claim, she does not support it with any evidence, and so the Court does not consider it. *See generally id.*

1 at ¶¶24-44; Doc. 41 at 7. She claims that these actions constituted racially disparate treatment in violation of Title VII and § 1981. Doc. 1 at ¶¶24-44.

Oasis argues that Cole has presented no direct evidence of discrimination. *See* Doc. 36 at 17 n.3. Cole disagrees. Doc. 41 at 26-30. She relies solely on the testimony of Josh Shirley—a former Oasis employee—who claims he heard either Penny Novak or Kim Copeland (he doesn't recall who) state that "We're not going to hire anymore black people," and that Kovak once exclaimed "I don't know why black people act the way they do." *Id.* at 30. No evidence, however, suggests these comments were about any employment decision made against Cole. And "remarks that are not tied to a challenged employment decision or are made by non-decisionmakers do not qualify under [the Eleventh Circuit's] definition of direct evidence of discrimination." *Franks v. Chitwood*, 572 F. Supp. 3d 1304, 1343 (N.D. Ga. 2021); *see also Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002). "To constitute direct evidence, a remark must indicate that *the employment decision in question* was motivated by race." *Melton v. I-10 Truck Ctr. Inc*, 166 F.4th 905, 914 (11th Cir. 2026) (internal quotation marks omitted). But Cole does not tie these remarks to any of the challenged employment decisions.

Absent direct evidence, the Court must evaluate Cole's claims through circumstantial evidence. Where a plaintiff relies on circumstantial evidence, she can establish her claims by relying on the *McDonnell Douglas* burden-shifting

framework, or by establishing a "convincing mosaic" of evidence sufficient for a jury to infer discrimination. *Ismael v. Roundtree*, 161 F.4th 752, 760-61 (11th Cir. 2025). This is true for claims brought under either § 1981 or Title VII. *See Nash v. Palm Beach Cnty. Sch. Dist.*, 469 F. App'x 712, 713 n.3 (11th Cir. 2012).

To establish a prima facie disparate treatment claim under the *McDonnell Douglas* framework, a plaintiff must show that (1) she belongs to a protected class; (2) she suffered an adverse employment action; (3) her employer treated similarly situated employees outside her class more favorably; and (4) she was qualified to do the job. *Howard v. Wilkie*, 421 F. Supp. 3d 1279, 1284 (N.D. Ala. 2019).

From there, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Id.* Finally, the plaintiff must rebut that articulation by presenting "significant probative evidence" demonstrating that the proffered reason is a pretext for unlawful discrimination. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (internal quotation marks omitted).

Oasis does not dispute Cole's membership in a protected class or her qualifications as a Team Coordinator. Doc. 36 at 17-18. It argues instead that she has identified no adverse employment action and cannot show that anyone outside her protected class was treated better. *Id.* at 18.

8

An adverse employment action is one that causes "harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). The harm need not be significant, serious, or substantial, but it must be concrete. *See id.* at 354-55 (plaintiff "must show some harm respecting an identifiable term or condition of employment").

Cole concedes she was never demoted, never had her pay reduced, could always perform her duties satisfactorily, was never formally disciplined, and never received a negative performance review. Doc. 36 at 6, ¶4; Doc. 41 at 7-8. She further concedes that she was denied a position on the business-development team because it required a college degree and more work experience, not because of race. Doc. 41 at 13. And that the denial of her request to assume Malcom's intake duties was similarly not race-motivated. *Id.* at 12.

Two allegations therefore remain. First, Cole continues to maintain that her temporary placement at the back of the office was racially motivated. *Id.* at 7. But she has identified no similarly situated comparator outside her protected class who was treated differently,[4] and she has not shown that the action was harmful. Much to the contrary, in fact: Cole testified that she preferred sitting in the back and had no issue with it. Doc. 34-2 at 181, 185. Although "[o]riginally" she "didn't prefer to

---

[4] Cole does not dispute that Penny Kozak, a white woman, was also placed in the back of the office at the same time. Doc. 36 at ¶46; Doc. 41 at 22.

sit in the back," she "accepted it." *Id.* at 186. She "grew to like being in the back." *Id.* "The vibe was better back there." *Id.* at 185. Second, she claims that she and Malcom were called "the girls," which she characterizes as a discriminatory epithet. *Id.* at 7, 21. That allegation, even accepted as true, does not constitute an adverse employment action; it implicates no identifiable term or condition of employment. *See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) ("Title VII is not a civility code, and not all profane ... language or conduct will constitute discrimination in the terms and conditions of employment."); *see also Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982) ("[T]he mere utterance of an … epithet which engenders offensive feelings in an employee does not affect the terms, conditions, or privileges of employment to a sufficiently significant degree to violate Title VII." (internal quotation marks omitted)).

In her complaint and response, Cole also alleges that she was "micromanaged," Doc. 1 at ¶3; Doc. 41 at 23-24, but does not specify which claim she intends that allegation to support, *see generally* Docs. 1, 41. To the extent it supports her disparate treatment claim, such a vague accusation is not cognizable because it is insufficiently concrete. *See Tamez v. A/C Storage Place, Ltd.*, 615-cv-1541, 2017 WL 10059003, at *6 (M.D. Fla. June 20, 2017) (noting that allegations regarding micromanagement are insufficiently concrete and collecting cases). Moreover, the evidence Cole cites to substantiate her allegation suggests that

Copeland micromanaged everyone she supervised, regardless of race. *See* Doc. 41 at 23 (Q: "Did you feel as though she was a micromanager?" [Shirley]: "Yes. She was a micromanager and poorly. She had bad decisions about things.").

Because Cole has not identified an adverse employment action, she has not established a prima facie case of disparate treatment under *McDonnell Douglas*. Nor does she fare better under the "convincing mosaic" theory. Such a mosaic may be assembled from circumstantial evidence, including "systematically better treatment of similarly situated employees, pretext in the employer's justification, suspicious timing, ambiguous statements, or other evidence from which a discriminatory intent might be drawn." *Thompson v. N. Am. Lighting, Inc.*, No. 3:24-cv-55, 2026 WL 1195044, at *8 (N.D. Ala. May 1, 2026). But a mosaic must be set on something. Without an identifiable adverse employment action, Cole necessarily fails to demonstrate a convincing mosaic of discrimination. *See Sumpter v. Grady Mem'l Hosp. Corp.*, No. 1:21-cv-04801, 2024 WL 6473304, at *13 (N.D. Ga. Mar. 14, 2024) (holding that plaintiff's convincing mosaic argument cannot overcome the lack of an adverse employment action). The Court therefore must **GRANT** summary judgment in Oasis's favor on this claim.

## II.    Hostile Work Environment (Counts 1-3)

Cole claims that she was subjected to a racially discriminatory hostile work environment during her employment. *See* Doc. 1 at ¶¶24-44. She claims she was

11

subjected to racial comments, micromanaged, denied promotions, placed in the back of the office, and generally mistreated. *Id.* She nevertheless omits this claim entirely from her summary-judgment briefing. *See generally* Doc. 41. The Eleventh Circuit has uniformly held that claims and arguments not raised in the initial response to a motion for summary judgment should be deemed abandoned. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, Oasis Health is entitled to summary judgment on this claim. Even so, the claim also fails on the merits.

To succeed on a claim for a hostile work environment, the mistreatment must be sufficiently "severe or pervasive" that it can be said to alter the terms, conditions, or privileges of employment. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020). This must be established both subjectively and objectively. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). The objective inquiry depends on examining the totality of the circumstances. *Id.* at 22-23. Those circumstances are considered through four factors: (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, rather than merely offensive; and (4) whether it unreasonably interfered with the employee's job performance. *Id.*

None of the incidents Cole cites are objectively severe or pervasive enough to support a hostile-work-environment claim. Two racial comments made about no one in particular "come nowhere close to being actionable" under Title VII. *Hudson v.*

*Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1314 (N.D. Ga. 2001). The general accusation of micromanagement, even if the Court assumes such scrutiny was racialized,[5] is not enough to support a hostile-work-environment claim. *See Rhenals v. Fed. Express Corp.*, No. 1:24-cv-22556, 2024 WL 4665254, at \*4 (S.D. Fla. Nov. 4, 2024). A comment about the propriety of her decorations, which was not made to Cole and was later investigated by Oasis, comes nowhere close to supporting a claim of severe or pervasive harassment. *See, e.g.*, *Walls v. Lowe's Home Centers, LLC*, 789 F. App'x 852, 855 (11th Cir. 2019). Cole states that she was "called bad names during here employment," Doc. 41 at 7, presumably referencing testimony from Shirley that Copeland and Kovak would sometimes refer to Cole and Malcom as "the girls," *id.* at 21. But that testimony does not even prove that Cole was aware that the phrase had been used. And even if the Court assumed that the phrase was heard by Cole and was meant and/or received in a racially derogatory manner, that would not rise to the level of a racially hostile work environment. *See, e.g.*, *McCann v. Tillman*, 526 F.3d 1370, 1378-79 (11th Cir. 2008). Nor does a mere rearrangement of the office space. *See, e.g.*, *Raybon v. Ala. Space Sci. Ex. Comm'n*, 337 F. Supp. 3d 1153, 1170-71 (N.D. Ala. 2018). Even taken together, the Court cannot see how any reasonable person would consider these incidents to be severe or pervasive

---

[5] And Cole has not provided evidence that any purported micromanagement was based on race, rather than generally applied throughout the office. *See supra* at 10-11.

13

harassment. *See generally* Docs. 1, 41. Accordingly, summary judgment would be warranted in Oasis's favor, even if the claim had not been abandoned.

## III.    Retaliation (Counts 1 & 3)

Cole claims to have suffered retaliation in violation of Title VII and Section 1981, *see* Doc. 1 at ¶¶28, 42, yet she failed to address this claim in her summary-judgment briefing, *see generally* Doc. 41. Accordingly, Oasis Health is entitled to summary judgment on this claim. *Resol. Tr. Corp.*, 43 F.3d at 599. The Court nevertheless notes that within her complaint, Cole nowhere identifies any protected activity. *See generally* Doc. 1. Such an activity is necessary to form the basis of a retaliation claim. *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

## CONCLUSION

Given the absence of any genuine disputes of material fact, the Court **HOLDS** that, as a matter of law, Cole has failed to produce sufficient evidence to sustain any of her claims, and therefore Oasis is entitled to judgment as a matter of law. Accordingly, the Court **GRANTS** Oasis Healthcare's Motion for Summary Judgment (Doc. 35) as to all counts.

**DONE** and **ORDERED** this 28th day of May, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE

14